UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 2:10-CR-35-DLB-HAI-1 |
| | ) | No. 2:12-CV-7210-DLB-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JOEY GREEN, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On April 16, 2012, Defendant Joey Green, proceeding *pro se*, filed a motion seeking to vacate his sentence pursuant to 28 U.S.C. § 2255. D.E. 63. The United States filed a response to the § 2255 motion on April 23, 2012, D.E. 65, to which Defendant has filed a reply.[1] D.E. 67. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition. For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his motion be **DENIED**.

## I. BACKGROUND

On April 20, 2010, ATF Agent Michael K. Oergel swore to a criminal complaint alleging that Defendant was a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On June 10, 2010, a federal grand jury indicted Defendant for possession of: 1) an Inter Ordnance, Model AK-47C, 7.62 mm semiautomatic rifle, bearing serial number 001003;

---

[1] In its April 25, 2012 Order, the Court ordered Defendant to file his reply by May 25, 2012. It was not mailed for filing until June 5, 2012. D.E. 67 at 12. Tardiness notwithstanding, the Court considers the arguments presented by Defendant in his Reply. However, in the future, Defendant must strictly comply with all deadlines established by the Court.

and 2) a Bryco Arms, Model Jennings Nine, 9 mm semiautomatic pistol, bearing serial number 1372994, as well as a forfeiture allegation.  D.E. 12.  Defendant faced a maximum of ten years of imprisonment, a fine of $250,000, and three years of supervised release.  *Id.*  Magistrate Judge Smith arraigned the Defendant on June 17, 2010, at which time he pled not guilty.  D.E. 15.

### A. Plea Agreement and Sentencing

Defendant pled guilty to both Count I and the forfeiture count on August 9, 2010.  D.E. 22.  The parties tendered a proposed plea agreement containing hand-written alterations.  D.E. 23.  Specifically, Defendant recommended that the base level offense be 24, while the United States recommended it as 26.  *Id.*  Defendant also crossed out language waiving his right to appeal and the right to attack collaterally any sentence.  *Id.*  Judge Bunning scheduled Defendant's sentencing for November 12, 2010.  D.E. 24.  On September 8, 2010, Judge Bunning ordered a psychological evaluation of Defendant pursuant to Defendant's oral motion at a status conference.  D.E. 31.  On November 4, 2010, Defendant moved to continue his sentencing.  D.E. 34.  Judge Bunning granted the motion.  D.E. 35.

Defendant filed his sentencing memorandum on December 20, 2010.  D.E. 40.  In his sentencing memorandum, Defendant argued that his criminal history category overstated the seriousness of his history.  *Id.* at 3.  Defendant stated that his felonies stemmed primarily from minor incidents that were heightened in seriousness when he fled from the police.  *Id.* at 3.  The memorandum also highlighted Defendant's history of physical abuse at the hands of his stepfather, his chronic substance abuse, and his mental health issues, including an untreated sleep disorder.  *Id.* at 2–3.  It also stated that Defendant's total offense level was 25, including a 2-level increase under U.S. Sentencing Guidelines Manual § 2K2.1(b)(4) and a 3-level decrease for

acceptance of responsibility, yielding (presumably in combination with his criminal history category) a sentencing range of 100–120 months. *Id.* at 4.

At Defendant's sentencing hearing on December 22, 2010, Judge Bunning heard Defendant's objection to the Presentence Report's calculation of a base offense level of 26. D.E. 41. Unlawful possession of firearms yields a base offense level of 26 if "(A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine. . ." U.S. Sentencing Guidelines Manual § 2K2.1(a)(1).[2] In the application notes to § 2K2.1, a "semiautomatic firearm capable of accepting a large capacity magazine" includes a "semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense . . . (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." *Id.* at cmt. n.2. Defendant based his objection on the argument that the AK-47 and a magazine of ammunition were not in close proximity at the time Defendant's residence was searched, i.e., they were found in separate rooms. D.E. 56 at 3. The United States entered a series of five photographs taken by digital camera as Exhibit A, all of which show Defendant or a family member of Defendant's holding the AK-47 with the magazine attached. *Id.* at 6–8. The digital camera on which the photographs were found dated the photographs as taken on December 6, 2009, after Defendant had been convicted of multiple felonies. *Id.* at 10.

Judge Bunning overruled Defendant's objection. D.E. 56 at 10. Judge Bunning considered the photographs, as well as the testimony of a detective present at the execution of the search warrant for Defendant's house. *Id.* at 10–11. Judge Bunning cited *United States v. Villanueva*, 315 F. App'x 845 (11th Cir. 2009), in which the Eleventh Circuit upheld the

---

[2] Per the plea agreement, all Guidelines references herein are to the November 1, 2009 Guidelines Manual. D.E. 23 at 2.

application of a higher base offense level based on a MySpace photo showing Villanueva holding a gun with a magazine attached taken after he was convicted of a felony. D.E. 56 at 11–12. As additional evidence for overruling Defendant's objection, Judge Bunning noted that the magazine was found in the same closet as the gun. *Id.* at 12.

Defendant also raised the issue of his psychological evaluation, and asked that Judge Bunning consider it when imposing a sentence. D.E. 56 at 18. Judge Bunning discussed Defendant's psychological evaluation and his history of substance abuse before sentencing Defendant. *Id.* at 25. Judge Bunning noted that the results of the evaluation needed to be viewed with some skepticism because of the evaluator's indications that Defendant was embellishing symptoms. *Id.* at 27. Based on Defendant's multiple felonies and history of violating probation, Judge Bunning also disagreed with Defendant that his criminal history category over-represented his actual history. *Id.* at 26–27.

Judge Bunning accepted the plea agreement proffered by the parties. *Id.* at 13. He calculated the advisory sentencing range to be 100 to 120 months based on a total offense level of 25 coupled with a criminal history category of V. *Id.* at 12. Defendant was sentenced to 108 months of imprisonment, with orders that he would participate in 1) the 500-hour residential substance abuse treatment program, if eligible; and 2) a mental health assessment, if deemed necessary, followed by three years of supervised release. D.E. 46.

**B. Direct Appeal**

On January 4, 2011, Defendant filed a notice of appeal to the Court of Appeals. D.E. 47. Defendant appealed on the ground that his sentence was "substantively unreasonable." D.E. 61 at 2. The Court of Appeals first noted that Defendant conceded the procedural reasonableness of his sentence by not enumerating it in his statement of issues. *Id.* "Procedural error may include

'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id.* (quoting *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009)).   Because Defendant did not raise the procedural reasonableness of his sentence, the Court of Appeals specifically stated that his argument regarding the application of U.S. Sentencing Guidelines Manual § 2K2.1(a)(1)(A) was waived.   *Id.*   Despite that statement, the Court of Appeals addressed Defendant's § 2K2.1(a)(1)(A) argument and found that his sentence was procedurally reasonable.  *Id.* at 2–3. The Court pointed to testimony before the District Court that a large capacity magazine was found in close proximity to the AK-47, and stated that this justified the base offense level used by the District Court in its sentencing computation.  *Id.* at 2.

Rejecting arguments that were raised, the Court of Appeals also found that Defendant's sentence was substantively reasonable (D.E. 61 at 3) for several reasons.  First, the Court noted that a sentence that falls within a properly calculated Sentencing Guidelines range can be "accorded a rebuttable presumption of reasonableness."  *Id.*  Second, it stated that in cases like Defendant's wherein the District Court considered all pertinent factors, the burden on a defendant in arguing that an unreasonable or insufficient amount of weight was given to a sentencing factor is much greater.  *Id.*  Next, the Court dismissed Defendant's assertion that the District Court improperly considered the "recency" of Defendant's criminal history as inconsequential because he received no criminal history points for "recency."  D.E. 61 at 3–4. Finally, the Court of Appeals stated that Defendant's contention that the District Court gave insufficient weight to his mental disorder or personal history was belied by the facts that the

District Court ordered a mental evaluation of Defendant, referred to the evaluation, and commented on Defendant's diagnosis during sentencing.  D.E. 61 at 4.

The Court filed its order affirming the District Court on February 29, 2012.  D.E. 61.  The mandate for Defendant's case issued on March 22, 2012.  D.E. 62.  Defendant did not file a petition for a writ of certiorari to the United States Supreme Court.  D.E. 63 at 2.

### C. Post-conviction Proceedings

In his motion for relief under 28 U.S.C. § 2255, Defendant asserts one ground for relief: that his sentence was "substantively unreasonable."  D.E. 63 at 5.  Defendant asserts more specifically that:

> The Sentencing range overstates the seriousness of defendants [sic] criminal history based on a [sic] overly inflated base offense level and criminal history, and in doing so the Court improperly gave undue weight to the "recency" of this crime in relation to his release from prison.
> Also, the court did not fully consider the statutory factors under §3553, in particular the defendants [sic] psychological history and unfortunate childhood.

*Id.*

The Court ordered the United States to respond (D.E. 64), which it did on April 23, 2012 (D.E. 65).  Defendant filed a Reply to the United States's Response on June 11, 2012.  D.E. 67. In his Reply, Defendant reiterates the ground for relief stated in his 28 U.S.C. § 2255 motion.  *Id.* at 2–9.  However, Defendant also alleges prosecutorial misconduct.  *Id.* at 9–10.  He asserts that the Assistant United States Attorney improperly gave her views on Defendant's psychological state, and that she advocated for sentencing enhancements that violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

Finally, in the Conclusion to his Reply, Defendant asserts that his trial counsel was ineffective.  D.E. 67 at 11.  He states specifically that his counsel: 1) should have requested a

downward departure under U.S. Sentencing Guidelines Manual § 5K2.13; and 2) should have challenged the calculation of his offense level as a violation of *Booker*.   D.E. 67 at 11. Defendant argues that because of these errors, trial counsel's performance fell below the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), thus subjecting Defendant to an excessive sentence.   *Id.*

## II. DISCUSSION

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights . . .").   For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that:

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255(b).   If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings."   *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).   If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process."   *Id.* (internal quotations omitted).

## A. Relitigation of Direct Appeal

Absent exceptional circumstances or an intervening change in the law, 28 U.S.C. § 2255 does not provide a movant with an avenue for relitigating matters that he raised and lost on direct review.   *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (citing *Oliver v. United*

7

*States*, 90 F.3d 177, 180 (6th Cir. 1996)); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

The one ground for relief listed in Defendant's 28 U.S.C. § 2255 motion is that his sentence was substantively unreasonable. D.E. 63 at 5. He argues specifically: 1) that the District Court abused its discretion by applying an "over-represented" criminal history; 2) that his base offense level was overly inflated; 3) that the court improperly considered the close proximity in time between his release from state custody and the offense in this case; and 4) that the court did not properly consider the Defendant's psychological status and personal background. *Id.* Defendant litigated claims 1, 3, and 4 on direct appeal to the Court of Appeals, *see* D.E. 61, and thus may not raise them in his 28 U.S.C. § 2255 motion. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)). Because Defendant has already litigated and lost these arguments on direct appeal, and has established no exceptional circumstances or intervening change in case law, the Court discusses them further only to complete the record in the event of objections.

### 1. Criminal History Category

In his 28 U.S.C. § 2255 motion, one form of relief prayed for by the Defendant is that the Court vacate his sentence and take into consideration the fact that the Defendant's criminal history category overstates the actual seriousness of his criminal history. D.E. 63 at 14. Neither at sentencing, direct appeal, nor now does Defendant argue that the District Court should have departed downward from the applicable guideline range under U.S Sentencing Guideline Manual § 4A1.3(b)(1). Instead, Defendant simply argues that his criminal history category over-represents his criminal history. D.E. 63 at 14. This argument was made by Defendant's trial counsel during Defendant's sentencing:

> MR. ALERDING:     What I think is a little bit different about his, certainly about his record than some other people I see before the Court and why I thought that his criminal history category is overrepresented for his record is that if you look at his record, most of Mr. Green's cases, like I mentioned in my memo, they all -- none of them start with a robbery, or none of them start with anything that serious, and I don't -- well, no they don't. . . .  It was generally low-level things that Mr. Green, through his own actions, escalated by not complying with the police.

D.E. 56 at 13–14.

Judge Bunning rejected that argument, citing as part of his reasoning the fact that Defendant had more than one felony. *Id.* at 26.  Judge Bunning also cited the fact that Defendant was arrested in 2000 on a felony charge, probated, and committed a felony while on probation. *Id.* at 26.  After serving out his sentence on both felonies, Defendant was arrested approximately ten months later for the charge in this case. *Id.* at 27.  Judge Bunning ended the discussion with:

> THE COURT:     Based upon your repeated criminal conduct, the violent behavior that you've shown, I simply don't believe that a variance as requested by your attorney is warranted in this case. . . . You have shown just a propensity to reoffend.

*Id.* at 27–28.

As enumerated above, the District Court did in fact address Defendant's argument and found it unpersuasive. The Court of Appeals ruled that this argument, as well as Defendant's other arguments regarding the substantive unreasonableness of his sentence, failed. *Id.* at 4. Defendant has wholly failed to establish a fundamental defect resulting in a complete miscarriage of justice or any error (much less an error sufficiently egregious) to amount to a violation of due process.

### 2. Proximity in Time from End of Previous Sentence to Current Offense

Defendant argues in his 28 U.S.C. § 2255 motion that the District Court "improperly gave undue weight to the 'recency' of the crime in relation to his release from prison" due to an overly inflated base offense level and criminal history.  D.E. 63 at 5.  The Court of Appeals stated, "Green's contention that the district court improperly considered the 'recency' of his criminal history is inconsequential because he admits that he received no criminal history points for the recency of his conduct."  D.E.  61 at 4.  Defendant has not provided any information to the contrary.  As a result, Defendant has wholly failed to establish a fundamental defect resulting in a complete miscarriage of justice or any error (much less an error sufficiently egregious) to amount to a violation of due process.

### 3. Defendant's Psychological Status and Personal History

Defendant states in his 28 U.S.C. § 2255 motion that "the court did not fully consider the statutory factors under [U.S. Sentencing Guidelines Manual] §3553, in particular the defendants [sic] psychological history and unfortunate childhood."  *Id.* at 5.

At his sentencing hearing, Defendant raised the issue of his psychological status and personal history, particularly in regard to Dr. Connor's psychological evaluation report of the Defendant.  D.E. 56 at 15–18.  Defendant asked to "vary" down by one point in his criminal history category based primarily on his psychological status.  *Id.* at 16.  In his sentencing reasoning, Judge Bunning noted that Defendant's mental health history and history of substance abuse did offer some explanation regarding Defendant's non-compliance with law enforcement. *Id.* at 25.  However, Judge Bunning did not find that argument persuasive enough to grant the requested variance.  *Id.* at 27–28.

No new information is presented on this issue.  Obviously, Defendant has wholly failed to establish a fundamental defect resulting in a complete miscarriage of justice or an error sufficiently egregious to amount to a violation of due process.

## B. Procedural Default

In his 28 U.S.C. § 2255 motion, the one ground asserted by Defendant that was not already litigated on direct appeal is that his base offense level was overly inflated.  D.E. 63 at 5.  In his Reply, Defendant provides more information by asserting that the "United States" incorrectly calculated and improperly added points to his base offense level.  D.E. 67 at 6.  Defendant specifically objects to his base offense level being calculated at 26 because the semiautomatic AK-47 found in his possession was in close proximity to a high-capacity magazine.  *Id.*; U.S. Sentencing Guidelines Manual § 2K2.1(a)(1), cmt. n.2.  Defendant also objects to two points being added to his base offense level because the AK-47 in his possession was stolen.  D.E. 67 at 6; U.S. Sentencing Guidelines Manual § 2K2.1(b)(4).  If construed as claims that the District Court improperly calculated the Guidelines range, these are claims of procedural unreasonableness.  *See United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009).

Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim.  *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000).  For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700; *Phillip*, 229 F.3d at 552.  If the prisoner fails to establish cause, it

is unnecessary to determine if he was prejudiced by the alleged violation. *Bousley,* 523 U.S. at 623.

In his Motion, Defendant merges his claims of procedural and substantive unreasonableness and alleges that he raised both issues on appeal. D.E. 63 at 4. However, in its Order the Court of Appeals expressly states that "[b]ecause Green does not raise the procedural reasonableness of his sentence, the propriety of the district court's base offense calculation, *i.e.,* the use of USSG § 2K2.1(a)(1)(A), has been waived." D.E. 61 at 2. While the Court of Appeals only specifically mentions Defendant's argument regarding the application of § 2K2.1(a)(1)(A), Defendant's allegation that the addition of a further two points per § 2K2.1(b)(4) was improper is also a claim of procedural unreasonableness that was waived by Defendant on appeal.

Nowhere in his Motion does Defendant offer any cause as to why he did not raise his arguments regarding procedural unreasonableness on appeal. Neither does Defendant offer any cause in his Reply. Because Defendant cannot show cause, an analysis as to prejudice is unnecessary. However, a prisoner who fails to establish cause and prejudice may still be able to obtain review of a procedurally defaulted claim if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622–23 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). Unfortunately for Defendant, there is no valid claim of actual innocence where the underlying basis for the claim is an erroneous U.S. Sentencing Guidelines Manual calculation. *Gibbs v. United States*, 655 F.3d 473, 478–79 (6th Cir. 2011). Because Defendant has not offered cause for why he did not raise his claims of procedural unreasonableness at the appellate level and has no valid claim of actual innocence, Defendant's claims fail.

Even if Defendant's claims of procedural unreasonableness as to his sentence were not procedurally defaulted, they would fail on the merits. While Defendant waived any argument of procedural unreasonableness on appeal by failing to raise it, the Court of Appeals considered Defendant's argument regarding the application of § 2K2.1(a)(1)(A) nonetheless.  D.E. 61 at 2–3.   The Court reasoned that "the district court heard testimony that the magazine and semiautomatic weapon were found in the same closet. . . . In addition, a digital camera was seized that contained a recent image of Green holding the semiautomatic rifle with the large-capacity magazine inserted."  *Id.* at 2.  The Court held that either of these facts alone was enough to justify the base offense level.  *Id.* at 2, 3.  Thus, the Court concluded, Defendant's sentence was procedurally reasonable.  *Id.* at 3.

As to the addition of two points to Defendant's base offense level per § 2K2.1(b)(4), Defendant entered into a plea agreement with the United States.  D.E. 43.  The last sentence of paragraph 3(a), a paragraph containing statements to which Defendant admitted when he signed the plea agreement, states, "When interviewed, the Defendant acknowledged possessing the firearms, *and that the AK-47 was stolen*."  *Id.* at 2 (emphasis added).  Judge Bunning noted at Defendant's sentencing that "there was no objection to the fact that the firearm was stolen." D.E. 56 at 12.  After failing to object to the addition of two points pursuant to §2K2.1(b)(4) at sentencing, admitting the firearm was stolen in the plea agreement, and failing to raise the issue on appeal, Defendant may not prevail on a claim that his sentence was improperly calculated due to the addition of two points to his base offense level pursuant to §2K2.1(b)(4).

Defendant cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005) in furtherance of his argument that the sentence handed down by the District Court violated his Sixth Amendment

rights.  D.E.  67 at 7.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490 (2000).  The Defendant may also admit such a fact instead of submitting the fact to a jury.  *Booker*, 543 U.S. at 232 (2005). Defendant asserts that the District Court violated this holding by calculating his offense level based on facts he was not "aware of," that were not in the charging indictment, that he did not admit to, and that were not submitted to a jury.  D.E. 67 at 7.

Defendant's reliance on *Apprendi*, *Blakely*, and *Booker* is misplaced.   During Defendant's sentencing hearing, Judge Bunning engaged in permissible fact-finding concerning the application of the Guidelines.  Detective Schierberg, who was present at the search of Defendant's residence, was called to testify about the physical proximity of the high-capacity magazine to the AK-47.  D.E. 56 at 4–6.  He also testified that a digital camera was found with photographs stored on it that showed Defendant, Defendant's wife, and Defendant's children brandishing the AK-47 with the high-capacity magazine attached.  *Id.* at 6–8.  Judge Bunning explicitly relied on those photographs as well as Detective Schierberg's testimony when sentencing Defendant.  *Id.* at 10.  Defendant admitted the firearm was stolen, and there is no constitutional violation when a court sentences based upon facts admitted by the defendant. *United States v. Dillard*, 438 F.3d 675, 684–85 (6th Cir. 2006).  No facts found by Judge Bunning were used in any way to exceed the statutory maximum penalty of ten years under 18 U.S.C. § 922(g)(1), but were instead only used in calculating what the Court appropriately characterized as the ***advisory*** Guidelines range.  *See* D.E. 56 at 12, 29.  Defendant has shown no error whatsoever in this analysis, and therefore Defendant is entitled to no relief.

### C. New Claims Raised in Reply

The Sixth Circuit has consistently held that arguments made for the first time in a Reply are waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also United States v. Abraitis*, No. 1:11-CV-2077, 2012 WL 2885586, at *2 ("[T]he Sixth Circuit has 'found issues to be waived when they are raised for the first time . . . in replies to responses.'" (citation omitted)).   Because Defendant's arguments regarding prosecutorial misconduct and ineffective assistance of counsel first appeared in his Reply, the Court discusses these arguments only to complete the record in the event of objections.

### 1. Prosecutorial Misconduct

Defendant asserts in his Reply a claim of prosecutorial misconduct.[3]   D.E. 67 at 9–10. Specifically, Defendant alleges that the United States deliberately "manipulate[d] the law" by seeking impermissible enhancements under *Apprendi*, *Blakely*, and *Booker* so that Defendant would receive a harsher sentence.  *Id.* at 9.   Defendant also alleges that the Assistant United States Attorney improperly offered her personal opinion on Defendant's mental health.  *Id.* at 10.

This claim is procedurally defaulted as it was not raised on direct appeal and no cause has been established explaining that failure.  *See Bousley v. United States*, 523 U.S. 614, 621–622 (1998).  Even if it were not procedurally defaulted, Defendant would not be entitled to any relief. The Supreme Court has held "that a prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (citation omitted). To prevail on this claim, "it is not enough that the prosecutors' remarks were undesirable or even

---

[3] Defendant does not specifically say he is making a claim of prosecutorial conduct.  However, a *pro se* document is to be liberally construed.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).  In that light, Defendant's allegations will be taken as presenting a claim for prosecutorial misconduct.

universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Supreme Court has recently described the *Darden* standard as a "very general one" which leaves "courts 'leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The test for prosecutorial misconduct revolves around denial of due process due to conduct at ***trial***.

Defendant has provided no authority applying this concept to sentencing instead of trial. If it did apply, Defendant cannot establish any violation. *Darden* was a pre-Antiterrorism and Effective Death Penalty Act habeas case arising out of a state murder, robbery, and assault with intent to kill conviction. The petitioner therein argued that the prosecutor's closing was so inappropriate as to render his trial fundamentally unfair, which argument focused upon comments that placed blame on corrections officers for releasing the petitioner on furlough, an implication that the death penalty was the only way to prevent similar acts, referring to the petitioner as an "animal," and even expressing the prosecutor's desire that the petitioner should have been shot and "had his face blown off. I wish that I could seem him sitting here with no face, blown away by a shotgun." *Darden*, 477 U.S. at 181 n.12. The Supreme Court rightly noted that the argument "deserves the condemnation it has received from every court to review it, although no court has held that the argument rendered the trial unfair." *Id*. Yet, just as every court had before it, the Supreme Court denied relief in *Darden*. *Parker* emphasizes the "general" nature of the *Darden* standard, and the highly inflammatory nature of the closing argument, but notes that even in *Darden* habeas relief was not warranted. *Parker*, 132 S. Ct. at 2155. "The

more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Nothing remotely approaching the conduct at issue in *Darden* has been alleged. The District Court complied with *Apprendi*, *Blakely*, and *Booker*, and appropriately considered Defendant's mental health. No unfairness based on this claim has been established.

## *2. Ineffective Assistance of Counsel*

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id. at* 687. In order to prove prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695.  Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Defendant asserts two claims of ineffective assistance of counsel in the Conclusion of his Reply.  D.E. 67 at 11.  First, Defendant states that his trial counsel was ineffective when he did not ask for a downward departure under U.S. Sentencing Guidelines Manual § 5K2.13. *Id.* Second, he further claims that trial counsel was ineffective when he did not challenge the calculation of his offense level as involving fact-finding impermissible under *Booker*. *Id.*

### i.   Downward Departure

Defendant argues that his trial counsel should have sought a downward departure at sentencing pursuant to U.S. Sentencing Guidelines Manual § 5K2.13.  D.E. 67 at 11.  Section 5K2.13 states, "A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."

At the sentencing hearing, Defendant's trial counsel discussed the Defendant's psychological, personal, and substance abuse history, including the psychological report prepared by Dr. Connor.  D.E. 56 at 15–16.  Judge Bunning referred to the same psychological evaluation report during sentencing, commenting, "I have the evaluation that I have reviewed." D.E. 56 at 13.  He further explained:

> THE COURT:          I do believe that the report of Dr. Connor is kind of a double-edged sword. He certainly believes that the diagnoses that he reached of obsessive compulsive disorder and the other diagnoses are appropriate, but he also indicated that he believed that you were embellishing symptoms for secondary gain. So I have to kind of take that with a grain of salt.

*Id.* at 27.  The District Court showed amply that it considered Defendant's psychological state.

Because the District Court did review and consider the psychological report, a motion for downward departure based on U.S. Sentencing Guidelines Manual § 5K2.13 would likely have been futile. A court may depart downward from the Sentencing Guidelines *sua sponte*.  *See United States v. McBride*, 362 F.3d 360 (2004); *United States v. Weaver*, 126 F.3d 789 (6th Cir. 1997); *United States v. Miller*, 910 F.2d 1321 (6th Cir. 1990).  However, the District Court did not grant a downward departure *sua sponte*, nor did it grant a downward departure on a different ground when requested by Defendant.  D.E. 27–28.

"[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Defendant has not overcome that presumption on this claim.

### ii. Offense Level

Defendant argues his counsel was ineffective "for not properly challenging the defendants [sic] four point enhancement via Booker."  D.E. 67 at 11.  In other words, Defendant claims his counsel should have argued that the Court engaged in impermissible fact-finding when calculating his offense level.  The undersigned has thoroughly examined the foundation of this claim above and determined that the District Judge engaged in perfectly permissible fact-finding under *Booker*.  Because of that, if counsel had made a *Booker* challenge, it would have

been futile.  Again, "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table).  Defendant is not entitled to any relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

No reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.  Defendant's motion fails to raise a claim that is not barred by the proscription against relitigation or procedurally defaulted. The two claims raised for the first time in Defendant's Reply are similarly barred.  Furthermore, even if those claims were properly before the Court, Defendant has failed to prove that a single one amounts to a substantial and injurious effect or influence on the proceedings, in the case of Defendant's

constitutional claims, or a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process, in the case of Defendant's non-constitutional claims.

## IV. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion for 28 U.S.C. § 2255 relief.  Because the filings and records establish conclusively that Defendant is not entitled to relief on the denied grounds, the Court need not conduct an evidentiary hearing.  The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability concerning those denied grounds.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 3rd day of June, 2013.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge